RECEIVED
IN MONROE, LA
APR 19 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JOSEPH JAMES THOMAS, JR. | CIVIL ACTION NO. 04-2088 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ATMOS ENERGY CORPORATION | MAG. JUDGE JAMES D. KIRK |

**Ruling**

This is an employment discrimination action brought by Plaintiff Joseph James Thomas, Jr. ("Thomas") against his former employer, Atmos Energy Corporation ("Atmos"). Thomas alleges that he was subjected to race discrimination and harassment, sexual harassment[1], and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*("Title VII").

On January 13, 2006, Atmos filed a Motion for Summary Judgment [Doc. No. 9], seeking dismissal of all Thomas's claims. On February 1, 2006, Thomas filed a memorandum in opposition to the Motion for Summary Judgment, attaching the affidavit of his former co-worker, Will Davis.

On February 20, 2006, Atmos filed a Motion to Strike Plaintiff's Affidavit [Doc. No. 12] and a Motion to Strike Will Davis' Affidavit [Doc. No. 13] (collectively "Motions to Strike").

On March 1, 2006, with leave of Court, Atmos filed a Reply brief in support of its Motion for Summary Judgment.

On March 8, 2006, Thomas filed a memoranda in opposition to Atmos' Motions to Strike.

For the following reasons, Atmos' Motions to Strike are GRANTED IN PART and DENIED

---

[1]Although the allegations in the Complaint are not completely clear, the Court assumes for purposes of summary judgment that Thomas intended to assert both racial and sexual harassment claims.

IN PART, and its Motion for Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Thomas, a black male, was originally hired by Atmos' predecessor, Louisiana Gas, in August 1996.

Later Thomas' employer became Citizens Communications Company ("Citizens"), formerly known as Citizens Utility Company.

In 1999, while employed by Citizens, Thomas made a complaint about a comment by his supervisor, Terry Boone ("Boone"). Boone, a white male, referred to him as "Mighty Joe Young . . . you know, the big black gorilla" after Thomas had demonstrated "exceptional" strength. Citizens conducted an investigation through its Operations Manager, Bob Griffin ("Griffin"). Griffin met with Boone and Thomas and also met with the construction department to review Citizens' Code of Conduct. Griffin instructed the workers that they should not engage in harassing or intimidating conduct. Thomas did not hear the Mighty Joe Young nickname or any other racial comments after this time.

In February 2000, Thomas had a disagreement with his crew leader, Mike Talkington ("Talkington"). Talkington asked Thomas to get Talkington's safety suit from the work truck, and Thomas refused. Boone met with both men about the incident. When he spoke with Thomas, Boone understood Thomas to say that he felt like blowing something up. Boone reported this comment to Griffin, who then reported the comment to Human Resources. Citizens terminated Thomas for making a threat of violence.

In November 2000, Thomas filed a complaint of race discrimination with the Equal Employment Opportunity Commission ("EEOC") based on the "Mighty Joe Young" comments and

the Talkington incident. Citizens' Senior Vice President flew in from Connecticut to meet with Thomas. Thomas claimed that he never said that he would "blow up something," but that he was "so upset he felt as though he could blow up or something." Citizens subsequently re-hired Thomas.

The EEOC found no cause to determine that a statute had been violated and issued a Notice of Right to Sue. Thomas did not file a lawsuit after receiving the Notice of Right to Sue.

After Thomas was re-hired, Boone and another supervisor, Edmond Mathis, signed his February 2001 performance evaluation.

In July 2001, Atmos purchased Citizens and became Thomas' employer. At the time, Thomas was employed as a senior construction operator. After Atmos became his employer, Thomas received favorable evaluations from Boone, was not denied any promotions, and received all pay increases to which he felt he was entitled.

In May 2004, Thomas complained to Boone that he had been harassed by a black male co-worker, Alvin Straughter ("Straughter"), on two different occasions. On the first occasion, Straughter allegedly came up behind Thomas in the break room and rubbed his private parts on Thomas' back. On the second occasion, Straughter and Thomas were again in the break room when Straughter allegedly grabbed his private parts and said that he was going to put them on Thomas' neck.

Thomas and Straughter had worked together for two or three years without any problems. Thomas believed that Straughter harassed him because Straughter was "drunk" and "joking," not because he had any sexual interest in Thomas. Thomas told Boone that he "did not want this to be blown out of proportion." Boone reported the complaint to Griffin. Griffin placed Thomas and Straughter on paid leave while Human Resources conducted an investigation.

3

As part of the investigation, Griffin and Debbie Redell ("Redell"), Atmos' Human Resources Manager from New Orleans, met with Thomas. Thomas did not indicate what action he wanted Atmos to take, but suggested that they speak with his co-workers, Marvin Pridgett ("Pridgett") and Larry Elmore ("Elmore").

Redell interviewed Pridgett, Elmore, Straughter, and three of Thomas' other co-workers, Larry Hampton, Kelvin Brown, and Willie Sampson, all of whom are black. Straughter denied the allegations and said that there was one time in the break room when he walked behind Thomas to get to the other side of the table, but that he had never rubbed himself against Thomas or made a gesture to his private parts. Hampton, Pridgett, and Brown witnessed one incident in which Straughter and Thomas were joking, and Straughter grabbed his pants when he sat down. Sampson and Elmore stated that they had not observed anything inappropriate. All co-workers agreed that the group engaged in a lot of joking, teasing, and name-calling and that Thomas had initiated sexual conversations in the past.

Following these interviews, Redell and David Hebert ("Hebert"), Vice President of Human Resources, decided that the evidence was inconclusive whether Straughter had intentionally harassed Thomas. Redell and Hebert agreed to take the following actions: (1) counsel Straughter about Atmos' policy, instructing him not to engage in inappropriate behavior; (2) instruct Thomas not to initiate discussions on sexual topics; (3) counsel all employees about joking in the workplace and about Atmos' conduct and harassment policies; and (4) conduct special training for supervisors and managers on preventing harassment.

On May 25, 2004, Boone, Griffin, Hebert[2], and Mike Mancil, Vice President of Operations

---

[2] Redell was serving jury duty, and Hebert attended the meeting in her place.

for the Western Region, met with Thomas. They informed him that the investigation did not conclusively establish that Straughter was at fault and further informed him of the actions Atmos intended to take. They also asked Thomas to refrain from initiating sexual discussions in the workplace. According to Thomas, Hebert stated, "we're supporting Alvin." [Doc. No. 11, Thomas Depo., p. 170]. In response, Thomas "quit" his job.

On or about June 24, 2004, Thomas filed a charge of discrimination with the EEOC alleging that he had been subjected to racial and sexual harassment and that the results of Atmos' investigation constituted retaliation against him for having filed a prior EEOC charge.

On July 9, 2004, the EEOC issued a Notice of Right to Sue to Thomas stating that it was unable to determine that a statute had been violated.

Thomas filed this lawsuit on October 8, 2004.[3]

## II. LAW AND ANALYSIS

### A. Motions to Strike

#### 1. Thomas' Affidavit

Atmos argues that the Court should strike Thomas' affidavit because it fails to state that Thomas has personal knowledge of the contents, the statements are inadmissible hearsay and irrelevant, the majority of the assertions are opinions, and the last portion is "impertinent and improper under Rule 12(f)." [Doc. No. 12, p. 1].

Thomas responds that an affidavit is not required to have a specific statement that it is based upon personal knowledge, but that it is for the Court to make such a determination. Thomas further responds that if there are irrelevant and inadmissible statements in the affidavit, the Court should

---

[3] Atmos does not allege that this lawsuit was untimely filed.

strike or disregard those statements, not strike the affidavit in its entirety. Thomas contends that opinions of lay witnesses are admissible under Federal Rule of Evidence 701 and that Atmos cannot truly distinguish between fact and opinion when even courts have difficulty doing so.

The Court agrees with both parties in part. While Thomas was not required to state specifically that the affidavit was based upon his personal knowledge, the Court must have some way to otherwise determine that the statements were, in fact, based upon his personal knowledge. Further, as a lay person, he may offer "opinions or inferences . . . rationally based on [his] perception," which are "helpful to clear understanding of [his] testimony or the determination of a fact in issue," but he may not give an expert opinion. Fed. R. Evid. 701. To the extent that his statements appear to be based upon personal knowledge and are factual, they may still be inadmissible if they otherwise fail to comply with the Federal Rules of Evidence. For example, Thomas is not permitted to testify as to hearsay. Finally, under Federal Rule of Civil Procedure 12(f), the Court may strike any matter in a pleading that is "impertinent or scandalous."

With these precepts in mind, the Court GRANTS IN PART and DENIES IN PART Atmos' Motion to Strike Plaintiff's Affidavit [Doc. No. 12]. The Court will not strike Davis' affidavit in its entirety, but will not consider the following statements in its ruling on the Motion for Summary Judgment:

(1) The Court will consider the testimony that Thomas applied for and did not obtain employment with the City of Monroe, but will not consider the hearsay and double hearsay testimony about an alleged conversation with his former co-worker, Pridgett.

(2) The Court will not consider the statements beginning on the last paragraph

of page 5 and continuing through page 6 because these are argumentative statements, not proper fact or opinion testimony.

(3) The Court will not consider the first paragraph on page 7 as impertinent and scandalous under Rule 12(f).

Likewise, the Court will not consider any arguments or disputed facts based on these inadmissible statements.

Specifically, as to the "Golden Rule" statements made by Thomas on page 7 of his affidavit, the Court cautions counsel for Thomas that such statements are clearly improper and will not be tolerated in any future pleadings.

**2. Davis' Affidavit**

Applying the same precepts, the Court GRANTS IN PART and DENIES IN PART Atmos' Motion to Strike Will Davis' Affidavit [Doc. No. 13]. The Court will not strike Davis' affidavit in its entirety, but will not consider the following statements in its ruling on the Motion for Summary Judgment:

(1) Davis' statement that he was aware that "there were other positions open at the time of involuntary termination of his employment with Atmos" is inadmissible because the Court cannot determine whether it is based upon personal knowledge and because it appears irrelevant to Thomas' retaliation claim[4];

(2) Davis' statement that Terry Boone was "lazy, sorry, trifling, and good for

---

[4]While it might have some possible relevance to a race discrimination claim, Thomas does not oppose summary judgment on his discrimination and harassment claims; he only opposes summary judgment on his retaliation claim.

nothing" is disregarded as improper opinion which is not helpful to the trier of fact;

(3) Davis' statement that it was his "understanding that Edmond [Mathis] was placed in a co-supervisor position with Terry, with Terry being demoted for his role in having [Thomas] fired" is inadmissible because it does not appear to be based upon personal knowledge; and

(4) Davis' statements on page 4 of his affidavit regarding the allegation that he was passed over for promotions are disregarded as irrelevant to Thomas' retaliation claim.

The Court will not consider any arguments or disputed facts based on these inadmissible statements.

### B. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley,*

992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Harassment and Retaliation under Title VII

Thomas alleges that he was subjected to discrimination and harassment because of his race when Atmos "refus[ed] to protect [him] from [Straughter's] humiliating actions." [Doc. No. 1, ¶ 36]. While it is not clear, Thomas also appears to allege that he was sexually harassed by Straughter. Finally, he alleges that he was constructively discharged in retaliation for his filing of an EEOC charge in 2000.

Atmos has moved for summary judgment on Thomas' discrimination, harassment, and retaliation claims. Thomas does not oppose Atmos' motion as to his discrimination and harassment claims. A motion for summary judgment cannot be granted simply because there is no opposition. *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985). However, the Court may accept the movant's description of the undisputed facts as *prima facie* evidence of its entitlement to judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 173-74 (5th Cir.1999); *NorDar Holdings, Inc. v. W. Sec. (USA) Ltd .*, No. 3:96-CV-0427-H, 1996 WL 39019, *2 (N.D. Tex. Dec. 18, 1996).

1. **Incidents of Discrimination and Harassment Prior to 2004**

Atmos asserts, and the Court agrees, that any claims about harassment or discrimination prior to the 2004 Straughter incident are time-barred. While Thomas filed a charge of race discrimination with the EEOC in 2000, he was required to file suit within ninety (90) days of the date he received a Notice of Right to Sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1). He failed to do so, and he cannot revive these claims now. Further, any other claims not referenced in the 2000 EEOC charge are time-barred because he failed to exhaust his administrative remedies by filing an EEOC charge within 300 days of the alleged discrimination or harassment. *See* 42 U.S.C. § 2000e-5(e)(1).

Accordingly, Atmos' Motion for Summary Judgment as to claims of harassment and discrimination prior to 2004 is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

2. **Discrimination and Harassment Related to the 2004 Straughter Incident**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). The statute has been interpreted to prohibit harassment.

a. **Sexual Harrasment**

In order to prevail on a claim of sexual harasment alleging hostile work environment, a plaintiff must prove the following elements:

(1) that he belongs to a protected class;

(2) that he was subjected to unwelcome harassment;

(3) that the harassment was based on sex;

(4) that the harassment affected a term, condition, or privilege of employment; and

(5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action.

*Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001).

In determining whether a workplace constitutes a hostile work environment, courts should look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Green v. Adm'rs. of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir.2002). A recurring point in the Supreme Court's hostile environment cases is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The standards set forth by the Supreme Court seek to ensure that Title VII does not become a "general civility code." *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 80 (1998). Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (quoting B. LINDEMANN & D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 172 (1992)). The Supreme Court has made it clear that conduct must be so extreme, so severe and pervasive, as to amount to a change in the terms and conditions of employment. *Id.* The objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale*, 523 U.S. at 81.

Thomas is a member of a protected class as a male, and he contends that the harassment was unwelcome.

11

However, Thomas admitted in his deposition that he cannot prove the third element–that the harassment was based on sex. According to his own testimony, he believes that Straughter was "drunk" and "joking" when he engaged in inappropriate behavior towards Thomas.

Additionally, the two incidents complained of by Thomas, while crude, childish, and inappropriate, do not rise to the severe and pervasive level of harassment necessary to affect a term, condition, or privilege of his employment. *See Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 875 (5th Cir.1999) (finding that four sexual comments and several instances of touching over a two-year period were not sufficient to create a material issue of fact as to severe or pervasive harassment); *Hockman v. Westward Comm'n, L.L.C.*, 407 F.3d 317, 328-29 (5th Cir.2004) (finding no hostile environment where, over the course of a year and a half, co-worker once made a remark to plaintiff about another employee's body; once slapped her on the behind with a newspaper; "grabbed or brushed" against plaintiff's breasts and behind; once held her cheeks and tried to kiss her; asked plaintiff to come to the office early so that they could be alone; and once stood in the door of the bathroom while plaintiff was washing her hands).

Accordingly, Atmos' Motion for Summary Judgment on Thomas' sexual harassment claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### b. Race Discrimination and Harassment

Thomas also asserted that he was subjected to race discrimination and harassment when Atmos "refus[ed] to protect [him] from [Straughter's] humiliating actions." [Doc. No. 1, ¶ 36]. However, Thomas does not provide any evidence whatsoever of race discrimination or harassment after the "Mighty Joe Young" and Talkington incidents in 1999. The Court has determined that any claims based on the 2000 EEOC charge are time-barred. While these incidents might provide some

background evidence of racism, even Thomas admits that he does not know whether Boone intended the "Mighty Joe Young" comment to be racist. Additionally, there is simply no evidence that Atmos' handling of the Straughter incident constituted race discrimination or harassment. Redell, the Human Resources Manager from New Orleans, was not involved in the 1999 incidents, and she interviewed Thomas' co-workers, all of whom are black. Based on this investigation, Redell and Hebert, who was not involved in the 1999 incident either, determined the appropriate actions to take. Under these circumstances, Atmos' Motion for Summary Judgment on Thomas' race discrimination and harassment claims is also GRANTED, and these claims are DISMISSED WITH PREJUDICE.

### 3. Retaliation

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute. 42 U.S.C. § 2000e-3(a) (2000). In order to state a prima facie case of retaliation, Thomas must show that (1) he engaged in an activity protected by law; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 407-408 (5th Cir. 1999). The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted).

If the plaintiff is able to establish his prima facie case, then the burden of production shifts to the defendant to demonstrate a legitimate non-retaliatory purpose for the employment action. *Id.* (citation omitted).

Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the

employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. *Id.*

The parties agree that Thomas can show that he engaged in a protected activity by filing an EEOC charge in 2000. However, Atmos contends that Thomas cannot make the required showing on the two remaining elements of his prima facie case.

### a. Constructive Discharge

Thomas argues that he was constructively discharged by Atmos' failure to discipline Straughter because "[n]o reasonable employee would continue in [his] employment where [his] co-workers are allowed to rub their genitals on the back of them, openly discuss having sexual intercourse with the folds of skin on their neck, and to contend otherwise is nonsense, pure and simple." [Doc. No. 11, pp. 9-10].

In order to raise a genuine issue of material fact for trial on a constructive discharge claim, Thomas "must prove that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th Cir.1993). "Moreover, to be actionable, [Thomas] must demonstrate a 'greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim.'" *Woods*, 274 F.3d at 301 (citations omitted); *see also Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir.1997).

In making its determination, the Court notes that none of the usual factors present in a constructive discharge case are alleged. It is undisputed that Thomas was not demoted; he was not asked to perform menial duties; his compensation was not reduced; and he was not subjected to any disciplinary action because of his complaint about Straughter. Thomas complains in his affidavit

that Boone took, in his words, some "petty" actions against him, but these are not the types of actions, in totality, that are sufficient to constitute constructive discharge.[5]

While Thomas may have been dissatisfied with Atmos' investigation and/or the actions the company chose to take as a result of its investigation, no reasonable person would have felt compelled to resign based on this dissatisfaction. Rather, he could have filed an EEOC charge while employed with Atmos or, perhaps, requested reassignment. *See Ugalde*, 990 F.2d at 243. Assuming that Straughter behaved in the way Thomas described, such behavior on two occasions is insufficient to create a hostile work environment, and Atmos' failure to discipline Straughter in the manner Thomas wished[6] is insufficient to constitute constructive discharge as a matter of law.

### b.   Causal Connection

Finally, even if Thomas could show that he was constructively discharged, he cannot make out a prima facie showing that there is a causal connection between his 2000 EEOC charge and his resignation in 2004.

Thomas admits that after he was reinstated in 2000, he received all pay increases to which he was entitled, received good evaluations from Boone, and that Boone was friendly towards him.

Further, even if Boone harbored ill will towards Thomas as a result of the 2000 EEOC complaint, the investigation into the Straughter incident was conducted by Redell, a Human Resources manager from New Orleans. It was Redell and Hebert, neither of whom had any

---

[5]For example, Thomas alleges that Boone assigned him to the galvanized pipe change out crew, yelled at him, would not let him participate in charitable activities, gave him a malfunctioning machine, and required him to perform menial tasks, such as wiping down walls inside the building. [Doc. No. 11, Thomas Affidavit, p. 5].

[6]It is unclear to the Court what disciplinary action Thomas wished for Atmos to take against Straughter.

15

involvement in the investigation of the prior incident involving Boone, who made the decision on what actions Atmos should take to resolve Thomas' complaint about Straughter.

Thomas suggests that Boone used a "clique" at Atmos to thwart the investigation into the Straughter incident, but there is no evidence that Boone influenced Thomas' co-workers, no evidence that Boone participated in the investigation, and no evidence that these co-workers and "clique" members harbored some animus against him because of his 2000 EEOC charges. In fact, Thomas admits that the co-workers did not support him because, in his opinion, he had higher morals than they did.

Finally, Thomas cannot make a showing of the causal connection element on the basis that Boone allegedly gave him a negative reference. The Court has stricken Thomas' affidavit testimony based on hearsay and speculation that Boone gave a negative reference to the City of Monroe, preventing Thomas from obtaining employment. Even if the Court were to rely on Thomas' affidavit, Thomas has no personal knowledge that Boone provided a negative reference; he has not presented an affidavit from his supposed source; and Boone has provided an affidavit stating that he never responded to a job reference request from the City of Monroe or provided information to the City of Monroe about Thomas.[7]

Given the passage of a lengthy period of time, Thomas' experiences at the company after his complaint, and the manner in which Atmos conducted its investigation into his complaint against Straughter, Thomas cannot show a causal connection between his 2000 EEOC charge against Atmos' predecessor, Citizens, and his 2004 resignation.

---

[7]Thomas did not move to amend his complaint to add a claim based on this alleged negative reference.

Accordingly, Atmos' Motion for Summary Judgment on Thomas' retaliation claim is GRANTED, and this claim is also DISMISSED WITH PREJUDICE.

## III. CONCLUSION

For the foregoing reasons, Atmos' Motion to Strike Plaintiff's Affidavit [Doc. No. 12] and Motion to Strike Will Davis' Affidavit [Doc. No. 13] are GRANTED IN PART and DENIED IN PART. The Court has considered those portions of each affidavit based upon personal knowledge and admissible under the Federal Rules of Evidence, but has not considered the inadmissible portions, as identified in the Court's Ruling. The Court also did not consider any arguments or disputed facts based on the inadmissible statements.

Based upon the record before the Court, Atmos' Motion for Summary Judgment [Doc. No. 9] is GRANTED, and Thomas' claims are DISMISSED WITH PREJUDICE, each party to bear its own costs.

MONROE, LOUISIANA, this __19__ day of __April__, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE